UNION TRUST COMPANY *vs.* WILLIAM H. McGINTY.

Suffolk.   March 5, 1912. — May 27, 1912.

Present: RUGG, C. J., BRALEY, SHELDON, & DeCOURCY, JJ.

*Bills and Notes.*

Under R. L. c. 73, §§ 46, 136, 137, if the holder of a negotiable promissory note, knowing that it was made for the accommodation of the payee who indorsed it to the holder, by agreement with such indorser for a valuable consideration extends the time of payment without the consent or knowledge of the accommodation maker, this does not discharge such maker from liability on the note.

CONTRACT on a promissory note for $250 dated October 13, 1902, signed by the defendant as maker, payable two months after date to one James J. McCluskey, indorsed by McCluskey and discounted by the plaintiff at his request. Writ in the Municipal Court of the City of Boston dated October 6, 1908.

On appeal to the Superior Court the case was tried before *Bell*, J. There was evidence that the note was made by the defendant solely for McCluskey's accommodation, that at the maturity of the note on December 13, 1902, the plaintiff received from McCluskey a payment of $10 as interest to February 13, 1903, and that in consideration of this payment without the defendant's knowledge or consent the plaintiff extended the time of payment of the note until the last named date. It was agreed that the defendant had introduced evidence which would warrant the jury in finding that the plaintiff when the note was discounted knew through its president that the defendant had executed the note solely for McCluskey's accommodation and that McCluskey had not given the defendant any consideration therefor.

The judge ordered the jury to return a verdict for the plaintiff; and the defendant alleged exceptions.

*F. W. Johnson,* for the defendant.

*C. A. Warren,* for the plaintiff.

Rugg, C. J. The single question presented in this case is whether the accommodation maker of a promissory note is discharged, if the holder, knowing that the note was made for the accommodation of the payee and indorser, by agreement with the indorser upon a valuable consideration, without the maker's consent, extends the time of payment.

Before the enactment of the negotiable instruments act (St. 1898, c. 533, R. L. c. 73, §§ 18–212) one who made a promissory note for the accommodation of another was as between the parties a surety. The holder, who had knowledge of the true relation of the parties, was bound to act toward such accommodation maker as toward a surety in order to preserve his rights against him. Under such circumstances an extension of time to the person ultimately liable, without the consent of the surety, that is the accommodation maker, released the latter. *Guild* v. *Butler,* 127 Mass. 386, and cases cited at 389. *Jennings* v. *Moore,* 189 Mass. 197. The precise point is whether this rule of law has been changed by the negotiable instruments act.

It is matter of common knowledge that the negotiable instruments act was drafted for the purpose of codifying the law upon the subject of negotiable instruments and making it uniform throughout the country through adoption by the legislatures of the several States and by the Congress of the United States. The design was to obliterate State lines as to the law governing instrumentalities so vital to the conduct of interstate commerce as promissory notes and bills of exchange, to remove the confusion or uncertainty which might arise from conflict of statutes or judicial decisions amongst the several States, and to make plain, certain and general the controlling rules of law. Diversity was to be moulded into uniformity. This act in substance has been adopted by many States. While it does not cover the whole field of negotiable instrument law, it is decisive as to all matters comprehended within its terms. It ought to be interpreted in such a way as to give effect to the beneficent design of the Legislature in passing an act for the promotion of harmony upon an impor-

tant branch of the law. Simplicity and clearness are ends especially to be sought. The language of the act is to be construed with reference to the object to be attained. Its words are to be given their natural and common meaning, and the prevailing principles of statutory interpretation are to be employed. Care should be taken to adhere as closely as possible to the obvious meaning of the act, without resort to that which had theretofore been the law of this Commonwealth, unless necessary to dissolve obscurity or doubt, especially in instances where there was a difference in the law in the different States.

Approaching the act from this point of view, it is apparent that no relation of principal and surety is established or contemplated by any of its sections. It determines the liability of the various parties to the negotiable instrument on the basis of that which is written on the paper. The obligation of all makers, whether for accommodation or otherwise, is to pay to the holder for value according to the terms of the bill or note. Their obligation is primary and absolute. §§ 77, 208. The act makes no provision for the proof of another and different relation than that expressly undertaken and defined by the tenor of the instrument signed. The fact that one is an accommodation maker gives rise to a duty no less or greater or different to the holder for value than that imposed upon a maker who received value. This is expressly provided by the act, even though such holder knew at the time of making that the maker was an accommodation maker. § 46. The act further provides in definite terms that the instrument and hence one primarily liable is discharged in one of five different ways (§ 136), that is, by payment by the principal debtor,, or by the party accommodated, by cancellation, by any other act which would discharge a simple contract, and by the principal debtor becoming the owner at or after maturity. There is no mention here of a discharge of an accommodation party by extension of time. But among the ways in which a party secondarily liable may be discharged is (§ 137) an agreement by the holder to extend the time of payment or to postpone his right to enforce the instrument "unless made with the assent of the party secondarily liable or unless the right of recourse against such party is expressly reserved." Whatever force might attach to the enumeration of ways in which the instrument and consequently parties primarily

liable might be discharged, if this provision stood alone, the inference arising from the omission of extension of time from such enumeration and its inclusion among the ways in which persons secondarily liable may be discharged, is almost irresistible that the Legislature did not intend that persons primarily liable should be discharged in that manner.    These two sections standing side by side, both dealing with the subject of discharge of liabilities of parties, the one mentioning, the other not mentioning, extension of time by the holder as a means of working discharge of liability, cannot be treated as accidental or without significance.    It is strong proof of a legislative purpose to change the pre-existing law of the Commonwealth.    These considerations outweigh the argument adduced from the fact that the "instrument" rather than "parties primarily liable" is the language used in § 136 and from the phrase of cl. 4, to the effect that the instrument may be discharged "by any other act which will discharge a simple contract."    The act establishes a liability on the part of an accommodation maker, which is not affected by an extension of time given by the holder to any other party to the note, even though as between such party and the accommodation maker a different relation may subsist in fact from that appearing on the face of the paper.    The result is to render somewhat more rigid the rights of the parties as set forth in the written instrument, and so far as the holder is concerned to establish liability to him upon a firm basis, not easily shaken by parol evidence.

There is nothing inconsistent with this conclusion in *Enterprise Brewing Co.* v. *Canning,* 210 Mass. 285.    The contention of the defendants there discussed concerned a relation of principal and surety between the payee and guarantor in an action between the two.

This appears to be the view taken without exception by the courts of other jurisdictions which have considered the point. In the interpretation of a statute widely adopted by the States to the end of securing uniformity in a department of commercial law, we should be inclined to give great weight to harmonious decisions of courts of other States, even if we were less clear than we are in this instance as to the soundness of our own conclusion. *Vanderford* v. *Farmers' Bank,* 105 Md. 164.    *Cellers* v. *Meacham,* 49 Ore. 186.    *Wolstenholme* v. *Smith,* 34 Utah, 300.    *Bradley*

*Engineering & Manuf. Co.* v. *Heyburn,* 56 Wash. 628. *National Citizens' Bank* v. *Toplitz,* 81 App. Div. (N. Y.) 593. Affirmed on another ground 178 N. Y. 464. *Richards* v. *Market Exchange Bank,* 81 Ohio St. 348. *Fritts* v. *Kirchdorfer,* 136 Ky. 643, 650.

*Exceptions overruled.*