## First State Bank of Nortonville, et al. v. Williams.

(Decided April 15, 1915.)

### Appeal from Hopkins Circuit Court.

1. Principal and Surety—Necessity for Notice of Dishonor.—An accommodation maker, or surety, of a promissory note is primarily liable, and is therefore not entitled to notice of dishonor.

2. Bills and Notes—Negotiable Instruments Act—Notes Not Actually Negotiated—Applicability.—The Negotiable Instruments Act applies to a note that is itself negotiable, whether actually negotiated to a holder in due course or not.

3. Principal and Surety—Extension of Time—Notice to Surety—Release.—Under the Negotiable Instruments Act, an accommodation maker, or surety, though known to be such by the payee, is not released by an agreement between the payee and the principal obligor extending the time of payment or postponing the payee's

right to enforce the instrument, though made without the assent of the accommodation maker.

LETCHER R. FOX, FOX & POWELL and GORDON, GORDON & COX for appellants.

JONSON & JENNINGS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

In the year 1909 John B. Brasher and C. S. Williams executed their promissory note for $500 payable to the order of the First State Bank of Nortonville. The company went into liquidation, and was placed in the hands of Otho Fowler as liquidating agent. On September 19, 1910, the note was renewed by the same parties by the execution of a new note for $500 payable three months after date to the order of Otho Fowler as liquidating agent, and negotiable and payable at the Farmers National Bank of Madisonville. Though a joint maker, Williams was a mere accommodation maker, or surety, and this fact was known to the bank and its liquidating agent. After maturity of the note Williams told Brasher that Fowler was going to sue on the note if he did not fix it up, and to see Fowler at once. Brasher went to Fowler and told him that if the bank would not bring suit he would pledge as collateral for the note a certain $5,000 note which was already up as collateral at the bank to secure another note for the sum of $1,000 due from Brasher to the bank. Fowler said, "All right." Brasher's understanding was that suit would not be brought on the note, and, in fact, none was brought. After Brasher made this arrangement he met Williams and told him that he had arranged the note, and no suit would be brought. Williams was not present when the arrangement was made.

This action was brought by the bank against Brasher and Williams to recover on the note. Williams defended on the ground that he was a mere surety on the note, and this fact was known to the bank and its liquidating agent, and that he had been released by the liquidating agent's failure to give him notice of dishonor, and by extension of the time of payment given to Brasher as principal without his consent. The law and the facts were submitted to the court without the intervention of a jury. The court held as a matter of fact that there

was a valid contract for the extension of the time of payment for a definite period of time, and that as a matter of law Williams was released from liability on the note. Judgment was entered accordingly, and the bank appeals.

Of course appellee's first contention that he was released for want of notice of dishonor is without merit. It is well settled that under the Negotiable Instruments Act an accommodation maker or surety is primarily liable, and is, therefore, not entitled to notice of dishonor. Fritts v. Kirchdorfer, 136 Ky., 643, 124 S. W., 882.

The other question presented is whether or not, under the Negotiable Instruments Act, an accommodation maker of a negotiable instrument is released by an extension of time for payment granted to his co-maker or principal, without his knowledge or consent. With singular unanimity the various courts that have considered this question answer it in the negative. Their reasons for so holding may be briefly summarized as follows:

The Negotiable Instruments Act was adopted by the several States for the purpose of establishing uniformity in the law regulating negotiable instruments. The Act was intended to embody in a code a particular branch of the law. Where the Act speaks, it controls, and its meaning should be ascertained by interpreting the language used, and not by assuming that the former law on the subject should remain unaltered. The Act defines persons who are primarily liable, and those who are secondarily liable. An accommodation maker who engages to pay the instrument according to its tenor is primarily liable. Under the head of "Discharge of Negotiable Instruments," the Act provides as follows:

"Sec. 119. A negotiable instrument is discharged:

"(1) By payment in due course by or on behalf of the principal debtor.

"(2) By payment in due course by the party accommodated where the instrument is made or accepted for accommodation.

"(3) By the intentional cancellation thereof by the holder.

"(4) By any other act which will discharge a simple contract for the payment of money.

"(5) When the principal debtor becomes the holder of the instrument at or after maturity in his own right.

"Sec. 120. A person secondarily liable on the instrument is discharged:

"(1) By an act which discharges the instrument.

"(2) By the intentional cancellation of his signature by the holder.

"(3) By the discharge of a prior party.

"(4) By a valid tender of payment made by a prior party.

"(5) By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved.

"(6) By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved in the original instrument."

The Act thus specifies how the instrument, and consequently the parties primarily liable, may be discharged; and the several ways in which persons secondarily liable may be discharged. When speaking of persons primarily liable it contains no provision releasing them by the holder's extending the time for payment or postponing his right to enforce the instrument. When speaking of persons secondarily liable, it does provide that they may be released by such an agreement. The question of the release of a party by the extension of the time of payment being thus present in the legislative mind, it is evident that if it was intended that a person primarily liable should be so released it would have so provided in the Act. Having covered the entire subject of discharge and release from liability, and having provided that parties secondarily liable may be released by extension of time, without any such provision affecting parties primarily liable, it is reasonable to conclude that the legislature did not intend that parties primarily liable should be so released. 3 R. C. L., 506; Union Trust Co. v. McGinty, 212 Mass., 205, 98 N. E., 679; Ann. Cas., 1913c, 525; Vanderford v. Farmers, &c. National Bank, 105 Md., 164, 66 Atl., 47, 10 L. R. A. (N. S.), 129; Cellars v. Meacham, 49 Ore., 186, 13 Ann. Cas., 97, 89 Pac., 426, 10 L. R. A. (N. S.), 133; Wolstenholme v. Smith, 34 Utah, 300, 97 Pac., 329; Bradley Eng. &c. Co. v. Heyburn, 56 Wash., 628, 106 Pac., 170, 134 A. S. R., 1127;

National Citizens Bank v. Toplitz, 81 App. Div., 593, 81 N. Y. S., 422, affirmed on another ground 178 N. Y., 464; Richards v. Market Exchange Banking Co., 81 Ohio St., 348, 90 N. E., 1000, 26 L. R. A. (N. S.), 99; Murphy v. Panter (Ore.), 125 Pac., 292.

The only court which has not followed the above rule in its entirety is the Supreme Court of Iowa, which held, in the case of Fullerton Lumber Co. v. Snouffer, 139 Iowa, 176, 117 N. W., 50, that, though the rule might be proper as between the holder in due course and an accommodation maker, it was not proper where the instrument, though negotiable, had not been negotiated, and the question arose between the maker and the payee himself. The court based its conclusion on the idea that the entire purpose and scope of the Negotiable Instruments Act was to fix the rights of holders in due course, and make it uniform in the several States, and the mere fact that the note was negotiable did not, as between the maker and payee, deprive the former of any defense thereto that he would otherwise have. In the very recent case of Cowan v. Ramsey, 140 Pac., 501, the question arose between the immediate parties to the instrument, and the court, after stating that the rule had been adopted by all the courts (mentioning them) that had had occasion to pass on the question, with the exception of the Supreme Court of Iowa in the case of the Fullerton Lumber Company v. Snouffer, *supra,* said:

"In this case it was held that, as between the immediate parties to the instrument, an extension of time by the holder, without the consent of the accommodation maker, would discharge the latter, on the theory that in such case the payee was not a holder in due course. It seems to us that such a construction of the statute does not comport with either its letter or spirit. The other construction appeals to us as the correct one; besides, it has the sanction of the great majority of the courts, and, by following it, uniformity of decision is more nearly secured and the object of the act accomplished."

Nor has this court adopted the view that the Negotiable Instruments Act applies solely to instruments that have been actually negotiated to a holder in due course. Our view on the subject is expressed in Wettlaufer v.

Baxter, 137 Ky., 362, 26 L. R. A. (N. S.), 804, in the following language:

"In short, if a note is not a negotiable instrument within the meaning of this act, then the rights and liabilities of the parties on it are to be determined by the law as administered with reference to non-negotiable instruments. If it is a negotiable instrument in the meaning of the act, then the rights and liabilities of the parties to it are fixed and determined by the provisions of the act alone."

We, therefore, conclude that if the note itself is negotiable, the act applies, whether it be actually negotiated to a holder in due course or not.

In view of the purpose of the Negotiable Instruments Act, and the necessity for uniformity in its interpretation, we, like the Supreme Judicial Court of Massachusetts, in the case of Union Trust Co. v. McGinty, supra, would be inclined to follow the practically harmonious decisions of the courts of other States, even if we were less certain of the soundness of our own conclusion. We, therefore, conclude that an accommodation maker, or surety, though known to be such by the payee, is not released by an agreement between the payee and the principal obligor extending the time of payment or postponing the payee's right to enforce the instrument, though made without the assent of the accommodation maker. This being true, it is unnecessary for us to determine whether or not the proven facts would constitute a discharge.

Judgment reversed and cause remanded, with directions to enter judgment in favor of plaintiff.