No. 20,188.

THE CITIZENS BANK OF BELTON, MO., *Appellee*, v. W. H. BOWDON and EMMA L. BOWDON, *Appellants*.

### SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Joint Makers—Interest Paid in Advance—Extension—Comaker Not Released*. Under the provisions of the uniform negotiable instruments act, one who signs a note as comaker, although in fact a surety, is not released by an extension of time granted to the principal in consideration of the payment of interest in advance.

2. SAME. Irrespective of the statute, the release of the surety is prevented in such a case by an agreement incorporated in the note, that upon the payment of interest by one of the makers time of payment might be extended without notice to the other.

3. SAME—*Joint Makers—One a Surety—Form of Judgment*. The mere fact that in an action upon a note one of the makers pleads suretyship as a basis for a defense, founded on an extension granted to the principal, does not require the court, after sustaining a demurrer to the plea, to make a finding that such party is a surety, for the purpose of preserving his rights as against the principal.

Appeal from Franklin district court; CHARLES A. SMART, judge. Opinion filed May 6, 1916. Affirmed.

*John T. Little, C. B. Little,* both of Olathe, and *Fred L. Harris,* of Ottawa, for the appellants.

*Wilbur S. Jenks,* of Ottawa, for the appellee.

The opinion of the court was delivered by

MASON, J.: W. H. Bowdon and Emma L. Bowdon signed a note payable to the Citizens Bank of Belton, Mo., which described them as being each a principal, and which contained the words: "The makers of this note hereby severally . . . consent that time of payment may be extended without notice thereof, upon the payment of the interest by either of us." The bank sued both makers. Emma L. Bowden answered, stating that she signed the note as a surety, receiving no consideration therefor; that the bank knew of this fact; that without her consent the time of payment was extended for two months in consideration of the payment of interest for that period in advance by W. H. Bowden; that thereby she was discharged from all liability. A demurrer to this answer (as well as to a similar one filed by W. H. Bowdon) was sustained, and upon the refusal of the defendants to plead further, judgment was rendered against them, from which they appeal. Complaint is made only in behalf of Emma L. Bowden.

(1) The uniform negotiable instruments act provides that one who by the terms of a note is absolutely required to pay it is "primarily liable." (Gen. Stat. 1909, § 5249.) It mentions an extension of time to the principal as one of the methods by which one who is "secondarily liable" may be released. (Gen. Stat. 1909, § 5373.) The inference is natural that a comaker of a note, although in fact a surety, can not be discharged in this manner, and this is the view that has generally been taken of the meaning of the statute. (*Bank v. Livermore*, 90 Kan. 395, 397, 398, 133 Pac. 734; Note, 26 L. R. A., n. s., 99; Note, Ann. Cas. 1913 C, 527; 2 Daniel on Negotiable Instruments, 6th ed., § 1312, p. 1477; *First State Bank v. Williams*, [Ky. 1915] 175 S. W. 10.) In Iowa it is held that as between the original parties an extension granted to one maker of a note may release another who is in fact his surety, this conclusion being based upon the provision of the uniform act that "in the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable." (*Lumber Co. v. Snouffer*, 139 Iowa, 176, 117 N. W. 50.) The arguments on each side of the question are summarized in a recent edition of a standard textbook. (2

Daniel on Negotiable Instruments, 6th ed., § 1312, Note 61.) Uniform statutes on commercial matters will largely fail of their purpose unless their construction shall also be uniform. With the exception noted, all the courts that have passed upon the matter hold that the negotiable instrument act precludes the maker of a note from interposing the defense here invoked, and we adopt that view. No hardship can result from the operation of the rule, once it is established. It merely defines the obligation of one who upon the face of a negotiable instrument assumes unconditional liability. It requires a surety who is unwilling to bind himself, irrespective of any extension granted to a comaker, to refrain from signing a note as one of the makers. The demurrer to the answer was therefore properly sustained.

(2) The same result would be reached here if the statute were regarded as not having changed the law on the subject. A surety can give an effective consent in advance that extensions may be granted to the principal. (32 Cyc. 161.) The provision of the note under consideration, that upon the payment of interest by one of the makers, time of payment might be extended without notice to the other, covers a case like the present, where interest was paid in advance. That is the natural interpretation of the agreement, for there would be no occasion for it if only past-due interest were paid.

(3) It is alleged that the court erred in not finding who was principal and who was surety on the note. It was the privilege of the surety to have this matter determined in order to preserve her rights as against her codefendant (Civ. Code, §§ 464, 474) ; but a timely application was necessary for that purpose (*Emery v. Bank,* ante, p. 231, 155 Pac. 34). The suretyship matter was pleaded only as a defense to the plaintiff's claim, and no error can be based upon an omission of the judgment to refer to it, for no finding in that regard was asked.

The judgment is affirmed.