GEORGE H. HAGER

*vs.*

# THE PRESIDENT, DIRECTORS AND COMPANY OF THE HAGERSTOWN BANK.

*Promissory Note—Methods of Discharge—Bank Cashier—Authority—Sale of Collateral.*

The methods named in the Negotiable Instruments Act (Code, Art. 13, sec. 138), of discharging a promissory note, are exclusive. p. 254

The cashier of a bank is not, by virtue, of his position as such, vested with authority to bind the bank by an agreement with one of the makers of a note to sell the collateral thereto, especially when the collateral is not salable at as high a price as that named in the agreement. p. 254

The exclusion of evidence as to the action of plaintiff bank in connection with a direction to it by defendant, one of the makers of the note in suit, to sell at a certain price stock deposited as collateral, *held* harmless, in view of the failure of the stock thereafter to reach such price. p. 255

*Decided April 5th, 1921.*

Appeal from the Circuit Court for Allegany County (HENDERSON, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*J. A. Mason,* with whom were *F. Brooke Whiting* and *Mason & Mason* on the brief, for the appellant.

*Samuel B. Loose* and *Henry H. Keedy, Jr.,* with whom was *Walter C. Capper* on the brief, for the appellee.

STOCKBRIDGE, J., delivered the opinion of the court.

On March 3rd, 1906, the late Colonel Buchanan Schley desired to purchase, and did purchase through the Hagerstown Bank, one hundred shares of the stock of the Amalgamated Copper Company. The money with which to make this purchase, $10,775, was advanced by the bank upon a note of which Colonel Schley and George H. Hager were the makers.

The stock, when issued, showed upon its face only the name of Colonel Schley, as owner, and the certificate was indorsed for the purposes of transfer by a blank indorsement on the back, and was delivered to the Hagerstown Bank as collateral for the loan made. Interest continued to be paid on this note to July, 1919, or approximately three years after the death of Colonel Schley. The plaintiff, George H. Hager, however, held an agreement under which he was declared to be one-half owner of the stock.

At some time, the date not being absolutely fixed, the Amalgamated Copper Company was bought out by or merged in the Anaconda Company, so that at the time of Colonel Schley's death, or very soon thereafter, the collateral held by the bank was stock of the Anaconda Company as a substitution for the stock of the Amalgamated Copper Company, which had been the original purchase and was mentioned in the note already alluded to.

The note was in form a demand note, but no demand appears to have been made until the year 1919 when, Mr. Hager not having paid, the note was called, and upon his failure to meet the note, this suit was instituted by the bank. The declaration was upon certain of the common counts, and a special count which set out the note already described. To this pleas were filed of never promised as alleged, never indebted as alleged, payment, discharge and limitations. At the trial of the case the plaintiff called to the stand John D. Kieffer, the cashier of the bank, but no evidence was given tending to show either payment, release, or limitations.

Under the Negotiable Instruments Act, Code, Art. 13, Section 138, the methods by which a negotiable instrument like the one sued on in this case can be discharged are fully enumerated, and in *Vanderford* v. *Farmers Bank,* 105 Md. 167, it is held that no other method of discharge will suffice.

The suit was brought against Mr. Hager and Colonel Schley. The latter was returned *mortuus est,* but there was no suggestion of Colonel Schley's death entered in the case, nor application upon the part of his personal representatives to be made parties to the suit, and the case continued to judgment, the judgment being against Mr. Hager only.

Eight exceptions were reserved during the taking of the testimony. The first three all related to the point whether an order had been given by Mr. Hager in November, 1916, which was after the death of Colonel Schley, for the sale of the Anaconda stock at 104, and these were all excluded.

The fourth bill of exceptions sought to elicit from the witness his reasons for not selling the stock in accordance with the order of Mr. Hager at 104. The rulings appealed from, covered in these four bills of exceptions, excluding the evidence, were all of them correct. While in some cases the exclusion of evidence of this character has been upheld upon the ground that the subjects sought to be inquired into involved a question of law rather than a question of fact, yet the far better ground is that the cashier of a bank is not, simply by virtue of his position as cashier, vested with authority to bind the bank, if he agrees with one of the makers of a note to sell collateral, especially so when the collateral is not salable at as high a price as that agreed upon between the cashier and a maker of the note. It was sought to justify this evidence upon the theory that Mr. Kieffer, the cashier, by virtue of his position, was an agent of the bank, who, if not expressly empowered, was nevertheless acting within the apparent scope of his authority.

Similar cases have arisen in a number of jurisdictions, and the decisions have not been entirely uniform. In this State, however, the law is thoroughly settled in the case of *Gray* v.

*Farmers Bank,* 81 Md. 640, where this Court, speaking through JUDGE PAGE, said: "A cashier is the business officer of the bank but only in the sense of one who transacts, and not one who regulates or controls its affairs. His duty has reference to daily routine business and not to matters involving discretionary authority, which belongs unless delegated, to the Board of Directors: as has been quaintly said, they are the minds and he is the hand of the corporation * * *. It will not be disputed when a special authority is conferred on him, or when he acts in conformity with a general usage or an established acquiescence of his Board of Directors, the bank will be responsible for such acts though beyond the ordinary scope of his duties."

The fifth bill of exceptions was a natural corollary to the questions involved in the fourth bill of exception, and since the objection to that has been sustained, the same ruling necessarily and properly follows the ruling on the fourth bill of exceptions.

The sixth bill of exceptions was to the refusal of a proffer to show the action of the bank, based on Mr. Hager's direction in November, 1916, directing a sale of the stock at 104. This ruling becomes immaterial in view of the subsequent evidence to the effect that at no time after the authority had been given upon the part both of the trust company, as executor of Colonel Schley, and Mr. Hager to sell the stock at 104, did it ever reach that figure. The same may be said of the seventh bill of exceptions.

The eighth bill of exceptions was intended to relate to a lack of knowledge on the part of Mr. Hager of the method of applying the dividends received from the Anaconda Company. While under certain aspects of the case this would have been entirely proper evidence, it is impossible to say that the appellant was in any manner injured thereby.

In the present case there is an added reason which should not be lost sight of, namely, the obligation for which the collateral was given was the joint obligation of two persons, one of whom had died and his personal representatives were not

and could not have been made parties to the suit so as to be affected by any result which might ensue. *Wolfe* v. *Murray,* 96 Md. 727. This at once differentiates the present case from one where the obligation is that of one person only. This being the settled law of this State, the rulings of the trial court were entirely correct.

The ninth and last exception relates to the action of the court in granting the plaintiff's prayer. There was but a single prayer offered, the one which was granted, and in view of the character of the proof adduced the granting of this prayer was entirely proper. The judgment appealed from will therefore be affirmed.

*Judgment affirmed, with costs.*