(No. 22873.—

CHARLES J. HEANEY *et al.* Appellees, *vs.* THE NORTHEAST PARK DISTRICT OF EVANSTON *et al.* Appellants.

*Opinion filed April 18, 1935.*

CHARLES CENTER CASE, and ALLAN J. CARTER, for appellants.

ADAMS, HAWLEY, BROWN & ADAMS, and BAYLEY, MERRICK, WEBSTER & GREGORY, (TAPPAN GREGORY, MELVIN M. HAWLEY, and ROBERT L. HUNTER, of counsel,) for appellees.

Mr. JUSTICE SHAW delivered the opinion of the court:

In the spring of 1929 a petition for the formation of the Northeast Park District of Evanston was filed pursuant to the act of the General Assembly entitled, "An act to provide for the organization of park districts and the transfer of submerged lands to those bordering on navigable bodies of water," approved June 28, 1895, in force July 1, 1895, as amended. (Cahill's Stat. 1931, chap. 105, par. 295.) Pursuant to this petition, which was for the formation of the district and for placing the names of certain persons on the ballots as candidates for commissioners, the county judge of Cook county issued his order calling the statutory election for July 9, 1929. The election was held in accordance with the order of the county judge, the returns were made to him and were canvassed by him, and thereafter he entered an order declaring that all of

the acts and proceedings required by law to be done before and after the election had been fully and lawfully done; that 817 votes had been cast at the election—411 for the organization of the proposed park district and 406 against it. His order further declared that the persons named therein were elected to the office of commissioners and decreed the park district to be a duly organized body politic. Subsequent to this order of the county court a petition was filed in the circuit court of Cook county asking leave to file an information in the nature of *quo warranto* against the persons named as commissioners of the park district, and upon this petition leave was granted and the petition filed in the name of the People, on relation of Gustav E. Seegren, questioning the right of the incumbents to act as commissioners for the district and challenging the legality of its organization. The proceeding thus started came to this court, and our opinion thereon may be found in 351 Ill. 363. In that case demurrers were sustained to certain pleas, and the judgment of the circuit court of Cook county in that respect was reversed in this court and the cause remanded. In that case we specifically held that the steps in the organization of the park district in question were judicial acts, and also that the act of 1895 above referred to presents a complete system for organizing such a district. During the pendency of the *quo warranto* proceedings above mentioned the appellees herein filed a written statement in the circuit court of Cook county seeking to invoke section 117 of the general Election law, (Smith's Stat. 1933, chap. 46, par. 120; Cahill's Stat. 1933, chap. 46, par. 130;) designating their written statement as a contest petition challenging the validity and results of the election for the formation of the district now in question. Specifically, and in the words of the appellees, the procedure was started to "contest results of an election held upon July 9, 1929, upon the following proposition: 'Shall the following described territory, situated in the county of

Cook and State of Illinois, viz., * * * be organized into a park district to be known as the Northeast Park District of Evanston?'" It is alleged in the so-called contest petition that the majority of the votes legally cast at the election were against the creation of the district. The park commissioners individually and the district as a corporation demurred to the petition, which demurrer was overruled. Having elected to stand by their demurrer, the court entered a decree *pro confesso* sustaining the allegations of the petition and granting the relief prayed. The record is brought here by direct appeal, a franchise being involved.

The steps by which a described territory becomes a municipal corporation as a park district are prescribed by statute, and upon completion of that procedure it is, in the words of the act, "deemed an organized park district, * * * and the said district so organized shall have the name designated and set forth in said petition, and by such name and style the same may sue and be sued, contract and be contracted with, acquire and hold real estate and personal property necessary for corporate purposes, and adopt a common seal and alter the same at pleasure, and such district shall constitute in law and equity a body corporate and politic and exercise the powers herein specified. All courts of this State shall take judicial notice of the organization of said park district and of the election of said commissioners." (Smith's Stat. 1933, chap. 105, sec. 5, par. 260; Cahill's Stat. 1933, chap. 105, par. 299.) We have held that such a park district is a municipal corporation. (*VanNada* v. *Goedde,* 263 Ill. 105.) We have also held, as above noted, in connection with this same park district, that the functions of the county judge in declaring the district organized are judicial acts.

While the acts performed are judicial, it is also true that the proceedings for the formation of the park district are special and statutory in their nature and constitute

neither an action at law nor a suit in equity. Such proceedings may be reviewed only in whatever manner, if any, may be provided by the statute itself. (*Freeport Motor Casualty Co.* v. *Madden,* 354 Ill. 486; *City of Chicago* v. *Chicago Steamship Lines,* 328 id. 309; *People* v. *Emmerson,* 294 id. 219.) To permit this proceeding to be carried on in the circuit court would amount to a review by that court of the final judicial act of the county court, which, so far as we can see from the statute, is not provided for either directly or by necessary implication.

A reading of section 117 of the Election law makes it apparent that it is inappropriate to the purpose for which it is here sought to be used. It provides, in substance, that in case of constitutional amendments or other public measures submitted to the voters of the State, and of public measures or subjects submitted to the voters of any city, village, incorporated town, county, sanitary district, "or any other municipal corporation, or any subdivision of the State," any five electors of the State, city, village, incorporated town, county, sanitary district or other municipal corporation or subdivision of the State, may contest the results of any such election by filing a written statement in the circuit or superior court in like form as in other cases of contested elections in the circuit court. It further provides: "Such city, village, incorporated town, county, sanitary district or other municipal corporation or subdivision of the State shall be made defendant and process shall be served as in suits against such city, village, incorporated town, county, sanitary district or other municipal corporation or subdivision of the State." The act further provides that where the contest relates to a constitutional amendment or public measure submitted to the voters of the State, the statement of contest shall not specify any defendant but notice of the contest shall be filed with the Attorney General, who may appear and take such steps as he may deem proper with respect to the contest. The act

contemplates two types of contest: one where the State as a whole is affected, in which case there shall be no defendant but notice only to the Attorney General, and the other class affecting political subdivisions of the State, in which a subdivision itself, as a municipal corporation, is defendant, with leave to others to intervene. It is our opinion that the words "subdivision of the State," in the statute, mean a political subdivision which is capable of being sued and of being a defendant in an election contest. There are many such subdivisions, such as school districts, community high school districts, drainage districts and park districts, and unless the word is so interpreted it can have no definite legal meaning.

The appellees say in their brief that they do not dispute the existence of the park district as a *de facto* corporation, nor do we think they could successfully do so. In this case the rule applies that no one but the sovereign by *quo warranto* may test the *de jure* existence of the municipal corporation. (*People* v. *McKinnie, 277* Ill. 342; *Village of Catlin* v. *Tilton, 281* id. 601; *People* v. *Freeman, 301* id. 562.) The provisions of section 117 of the Election law are intended to apply to such questions as may be submitted to voters within the territorial limits of an existing political subdivision of the State. To hold otherwise would be to permit two entirely independent judicial inquiries as to the organization of a park district, one made by the county judge upon organization of the district and another by the circuit court upon an election contest. The statute expressly provides that the district shall be declared organized upon the act being complied with and the order of the county judge being entered, and this could be only a conditional declaration or an inconclusive judicial act if the subject matter remained open to collateral attack in another court.

In arriving at our conclusion we have not ignored *Bramstaedt* v. *Indian Boundary Sanitary District, 332* Ill. 339,

relied upon by appellees. In that case a petition was filed in the superior court of Cook county to contest an election held for voting upon the proposed formation of a sanitary district. A demurrer to the petition was sustained upon the sole ground that it was not properly verified, and the opinion in the case shows that the only point considered by this court was the sufficiency of the verification. It was held sufficient and the judgment was reversed for that single reason. The questions which we have considered in this case were neither presented, considered nor decided in that one and it is not an authority upon any point now being examined. A decision by a court of review is not an authority upon a question neither considered nor decided by it. (*Anway* v. *Grand Rapids Railway Co.* 179 N. W. (Mich.) 350, 12 A. L. R. 26; *Continental Mutual Savings Bank,* v. *Elliott,* 166 Wash. 283, 6 Pac. (2d) 638, 81 A. L. R. 1005; *Kneeland* v. *Emerton,* 280 Mass. 371, 183 N. E. 155, 87 A. L. R. 1.) In *Webster* v. *Fall,* 266 U. S. 507, 45 Sup. Ct. 148, Mr. Justice Sutherland used the following language upon the precise point relied upon by appellees: "Counsel for appellant directs our attention to other cases where this court proceeded to determine the merits notwithstanding the suits were brought against inferior or subordinate officials without joining the superior. We do not stop to inquire whether all or any of them can be differentiated from the case now under consideration, since in none of them was the point here at issue suggested or decided. The most that can be said is that the point was in the cases if anyone had seen fit to raise it. Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents," for which statement many authorities are cited. For the reasons indicated, and upon many more authorities which might be cited, we are of the opinion that the *Bramstaedt case* cannot be held to be an authority conflicting in

any way with the conclusions we have arrived at on the questions presented by this record.

The judgment of the circuit court of Cook county will be reversed, and since the proceeding cannot be maintained it will not be necessary to remand the cause. A final judgment will be entered in this court dismissing the proceeding.

*Reversed and proceeding dismissed.*