C. A. GRAHAM v. A. M. SHEPHARD.

(*Knoxville.*   September Term, 1916.)

1. **BILLS AND NOTES.** Agreement to extend time of payment. Effect on liability of accommodation maker.

The general provisions of Negotiable Instruments Law (Laws 1899, chapter 94). are: "The person primarily liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are secondarily liable." Section 119 provides that a negotiable instrument is discharged: "1. By payment in due course, by or on behalf of the principal debtor; 2. By payment in due course, by the party accommodated, where the instrument is. made or accepted for accommodation; 3. By the intentional cancellation thereof by the holder; 4. By any other act which will discharge a simple contract for the payment of money; 5. When the principal debtor becomes the holder of the instrument at or after maturity in his own right." Section 120 provides that a person secondarily liable on the instrument is discharged (subsection 6); "By an agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved." *Held*, that a person signing a note as maker, but shown by extrinsic evidence to have been an accommodation maker was primarily liable, and is not discharged by an agreement, although made without his knowledge or consent, between the holder and maker, for valuable consideration, to extend the time of payment. (*Post*, *pp*. 421-427.)

Acts cited and construed:  Acts 1899, ch. 94.

Cases cited and approved:  Bank v. Walter, 104 Tenn., 11;  Vestal v. Knight, 54 Ark., 97;  Bowen v. Darby, 14 Fla., 202;  Perry v. Hodnett, 38 Ga., 103;  Meredith v. Dibrell, 127 Tenn., 387;

Graham v. Shephard.

Hamilton Nat. Bank v. Breeden et al., 130 Tenn., 465; Hermitage Nat. Bank v. Carpenter, 131 Tenn., 136; Pharr v. Stevens, 124 Tenn., 669; Vanderford v. Nat. Bank, 105 Md., 164; Fullerten Lbr. Co. v. Snouffer, 139 Iowa, 176; Nat. Citizens' Bank v. Toplitz, 178 N. Y., 464.

Case cited and distinguished:  Union Trust Co. v. McGinty, 212 Mass., 205.

Code cited and construed:  Sec. 3517 (S.).

2. **PRINCIPAL AND SURETY.** Statutes. Repeal. Implied repeal by act relating to same subject.

Shannon's Code, sec. 3517, providing that a surety, as a party secondarily liable, may be discharged from liability by giving the holder of the note thirty days' written notice to sue, and section 3522, providing that a surety may be discharged from liability by the principal debtor procuring a stayor to stay the judgment, in so far as they conflict with the later legislative enactment in the Negotiable Instruments Law, were repealed by that act. (*Post, pp.* 421-427.)

---

FROM McMINN.

---

Appeal from the Circuit Court of McMinn County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —S. C. BROWN, Judge.

LILLARD & TODD and N. Q. ALLEN, for plaintiff.

O. W. WELLS, for defendant.

MR. JUSTICE LANSDEN delivéred the opinion of the Court.

This suit was brought before a justice of the peace to recover upon the following note:

"$100.00.                    Etowah, Tenn., 4/11/1914.

"Sixty—60—days after date we promise to pay to the order of A. M. Shephard one hundred and no/100 dollars, for value received, with interest after maturity at six per cent. per annum; and if collected by attorney at law, after maturity, all cost of collection, including ten per cent. attorney's fees, shall be added to principal and interest and be part of the debt.

"Each party hereto, whether maker, surety, or indorser, hereby waives all homestead and exemption rights under the laws of Tennessee and Georgia, or any other State, of the United States, and further waive demand, protest, and notice of demand, nonpayment, and protest.

"J. C. GRAHAM. [L. S.]
"C. A. GRAHAM. [L. S.]"

Indorsed:

"June 9th, Cr. by cash....................$2.00"

It appears without dispute that C. A. Graham was an accommodation maker, and this was known by the holder at the time the note was executed. At or about the maturity of the note the holder made an agreement with J. C. Graham for a valuable consideration to extend the time of payment without the

knowledge or consent of C. A. Graham. The question for decision is whether these facts release C. A. Graham from liability upon the note.

Prior to the enactment of the Uniform Negotiable Instruments Law it is clear that such facts would have released the accommodation maker under the rule existing in this State as well as many other States. *Bank* v. *Walter,* 104 Tenn., 11, 55 S. W., 301; *Vestal* v. *Knight,* 54 Ark., 97, 15 S. W., 17; *Bowen* v. *Darby,* 14 Fla., 202; *Perry* v. *Hodnett,* 38 Ga., 103.

Decisions to the same effect can be found in the reports of Illinois, Indiana, Iowa, Louisiana, Massachusetts, Michigan, Missouri, New Hampshire, New York, Vermont, Virginia, and Wisconsin, but there was some modification of the rule in the States of Maine, Illinois, and prehaps others.

Shannon's Code, section 3517, provides, in substance, that a surety, as a party secondarily liable, may be discharged from liability by giving the holder of the note thirty days' written notice to sue; and at section 3522 it is provided that a surety may be discharged from liability by the principal debtor procuring a stayor to stay the judgment.

The title of the act is:

"A general act relating to negotiable instruments, being an act to establish a law uniform with the laws of other States on that subject."

Under the general provisions of the act, on page 140, it is enacted as follows:

"The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are 'secondarily' liable."

By section 119 of said Act it is provided that a negotiable instrument is discharged:

"1. By payment in due course, by or on behalf of the principal debtor;

"2. By payment in due course, by the party accommodated, where the instrument is made or accepted for accommodation;

"3. By the intentional cancellation thereof by the holder;

"4. By any other act which will discharge a simple contract for the payment of money;

"5. when the principal debtor becomes the holder of the instrument at or after maturity in his own right."

Section 120 provides that a person secondarily liable on the instrument is discharged:

"1. By any act which discharges the instrument;

"2. By the intentional cancellation of his signature by the holder;

"3. By the discharge of a prior party;

"4. By a valid tender made by a prior party;

"5. By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved;

"6. By an agreement binding upon the holder to extend the time of payment or to postpone the hold-

er's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved.''

The case of *Meredith* v. *Dibrell,* 19 Cates (127 Tenn.), 387, 155 S. W., 163, 46 L. R. A. (N. S.), 92, Ann. Cas., 1914B, 1079, construed section 120, above set out, and held that an extension of time to the principal, with an express reservation of the right of recourse against the surety, does not discharge the surety as provided by subsection 6 of section 120. No other question was considered or determined in that case. It was held that the section of the Negotiable Instruments Law last referred to was merely declaratory of the law merchant prior to its enactment.

In *Hamilton Notional Bank* v. *Breeden et al.,* 3 Thomp. (130 Tenn.), 465, 171 S. W., 86, L. R. A., 1915 C, 831, it was considered and determined upon the facts of that case that there was no agreement binding upon the holder to extend the time of payment within the meaning of the Negotiable Instruments Law.

In *Hermitage National Bank* v. *Carpenter,* 4 Thomp. (131 Tenn.), 136, 174 S. W., 263, Ann. Cas., 1916D, 730, it was held that a diversion of the proceeds of the notes which the surety signed to a purpose other than that agreed upon discharged the surety from liability to the extension of the diversion. This case had no reference to the Negotiable Instruments Law, as will be observed from an inspection of it.

Such is the state of the law in this State. The sections of the Code set out, in so far as they conflict with the later legislative enactment in the Negotiable Instruments Law, were, of course, repealed by that act. As the act states in its title, its purpose is to secure a uniformity of law respecting negotiable instruments so that these important articles of commerce shall be uniform as nearly as possible throughout the country. *Pharr* v. *Stevens,* 124 Tenn. (16 Cates), 669, 139 S. W., 730; *Union Trust Co.* v. *McGinty,* 212 Mass., 205, 98 N. E., 679, Ann. Cas., 1913C, 525.

In the last case cited it was said:

"It is matter of common knowledge that the Negotiable Instruments Act was drafted for the purpose of codifying the law upon the subject of negotiable instruments and making it uniform throughout the country through adoption by the legislatures of the several States and by the Congress of the United States. The design was to obliterate State lines as to the law governing instrumentalities so vital to the conduct of interstate commerce as promissory notes and bills of exchange, to remove the confusion or uncertainty which might arise from conflict of statutes or judicial decisions amongst the several States, and to make plain, certain, and general the controlling rules of law. Diversity was to be molded into uniformity. This act, in substance, has been adopted by many States. While it does not cover the whole field of negotiable instrument law, it is decisive as to all

matters comprehended within its terms. It ought to be interpreted in such a way as to give effect to the beneficent design of the legislature in passing an act for the promotion of harmony upon an important branch of the law. Simplicity and clearness are ends especially to be sought. The language of the act is to be construed with reference to the object to be attained. Its words are to be given their natural and common meaning, and the prevailing principles of statutory interpretation are to be employed. Care should be taken to adhere as closely as possible to the obvious meaning of the act, without resort to that which had theretofore been the law of this commonwealth, unless necessary to dissolve obscurity or doubt, especially in instances where there was a difference in the law in the different States.''

The plain meaning of the general provision of the act that persons primarily liable on an instrument are those who ''by the terms of the instrument'' are absolutely required to pay it necessarily includes the accommodation maker. By reference to the terms of the instrument in suit it is obvious that the plaintiff in error is absolutely required to pay it. His signing the note as surety, as an accommodation for his brother, does not appear by the terms of the instrument, but only appears by extrinsic testimony. So, if we give the words of this act their plain and obvious meaning, the plaintiff in error must be held primarily liable.

This view is strengthened by section 119. By that section the different ways in which a negotiable instrument may be discharged are set out by the legislature, and an extention of time by the holder to the maker, without the knowledge or consent of the accommodation maker, and for a valuable consideration, is not one of the methods by which one primarily liable may be discharged. Section 120 enacts the methods by which one secondarily liable may be discharged, and the claim set up in this case is expressly enumerated in subsection 6 as a method of discharge. Construing the terms of the act set out above together, it is obvious that an accommodation maker is primarily liable, and may not be discharged by the agreement claimed.

This construction has been given the sections of the Negotiable Instruments Law with almost unbroken uniformity. The first case perhaps was *Vanderford v. Farmers, etc., National Bank,* 105 Md., 164, 66 Atl., 47, 10 L. R. A. (N. S.), 129. The construction announced in that case was subsequently followed by the States of Ohio, Oregon, Utah, Washington, Kentucky, and North Carolina. In Iowa it has been held that as between the parties to the instrument the Negotiable Instruments Law does not apply, and the payee, not being regarded as a holder in due course, is discharged according to the law merchant in force in that State. *Fullerton Lumber Co.* v. *Snouffer,* 139 Iowa, 176, 117 N. W., 50.

Graham v. Shephard.

In New York the question under consideration was expressly pretermitted in *National Citizens' Bank* v. *Toplitz,* 178 N. Y., 464, 71 N. E., 1. A full history of the course of the decisions of the various courts can be obtained from an examination of *Union Trust Co.* v. *McGinty,* supra.

The result is that the judgment of the court of civil appeals is affirmed, with costs.