THE ATLANTIC LIFE INSURANCE COMPANY, COMPLAINANT, APPELLANT, *v.* J. M. CARTER *et al.*, DEFENDANTS, APPELLEES.

(*Nashville*, December Term, 1932.)

Opinion filed February 25, 1933.

Simmonds & Bowman, for complainant, appellant.

L. H. Allred and Jas. G. Bare, for defendants, appellees.

Mr. Justice McKinney delivered the opinion of the Court.

By the bill complainant seeks a decree for $1800, balance due on a note. The chancellor dismissed the bill, and his decree was affirmed by the Court of Appeals.

On April 15, 1924, defendants, J. M. Carter, Luther Carter, and Rachel Carter, executed their negotiable promissory note in the sum of $4,000, payable to bearer five years after date, and secured same by a mortgage on certain real estate in Erwin. Said note, shortly after its execution, was negotiated to complainant for a valuable consideration and without notice of any infirmity. A little later defendants sold and conveyed the mortgaged property securing said note to M. L. Bailey, who assumed its payment as part of the purchase price, and complainant was duly notified of said facts. When the note matured Bailey was unable to pay it, and, upon his application, the time of payment was extended one year without the knowledge or consent of defendants. Before the extended due date Bailey died, and his estate is wholly insolvent. Complainant demanded of defendants that they pay said note, which they refused to do. The mortgage was thereupon foreclosed, and, after crediting the note with the proceeds of sale, the bill herein was filed to recover the balance due on said note.

The defense relied upon is that when Bailey assumed the payment of said note he became primarily liable and defendants secondarily liable for its payment, and that defendants, being only secondarily liable, were released when the holder extended the time of payment at the request of Bailey without their consent. Independently of the Uniform Negotiable Instruments Law, chapter 94, Acts of 1899, this would unquestionably be correct. Under the general provisions of the law, on page 140, it is said:

"The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are 'secondarily' liable."

Section 119 states how a negotiable instrument may be discharged; but it is not contended that defendants have been discharged in any of the ways enumerated therein.

Section 120 provides how one secondarily liable may be discharged, subsection 6 thereof being as follows:

"By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

There is no such provision as to one primarily liable, and the inclusion of one secondarily liable would impliedly exclude one primarily liable.

Section 60 of the Act provides that "The maker of a negotiable instrument, by making it engages that he will pay it according to its tenor," etc.

The object and meaning of the Negotiable Instruments Law is so clearly and succinctly stated by Chief Justice Rugg in the leading case of *Union Trust Co.* v. *McGinty,* 212 Mass., 205, Ann. Cas., 1913 C, 525, 526-527, that we quote therefrom, *in extenso,* as follows:

"It is a matter of common knowledge that the negotiable instruments act was drafted for the purpose of codifying the law upon the subject of negotiable instruments and making it uniform throughout the country through adoption by the legislatures of the several states and by the Congress of the United States. The design was to obliterate state lines as to the law governing instrumentalities so vital to the conduct of interstate commerce as promissory notes and bills of exchange, to remove the confusion or uncertainty which might arise from conflict of statutes or judicial decisions amongst the several states, and to make plain, certain and general the controlling rules of law. Diversity was to be moulded in-

to uniformity. This act in substance has been adopted by many states. While it does not cover the whole field of negotiable instrument law, it is decisive as to all matters comprehended within its terms. It ought to be interpreted in such a way as to give effect to the beneficent design of the legislature in passing an act for the promotion of harmony upon an important branch of the law. Simplicity and clearness are ends especially to be sought. The language of the act is to be construed with reference to the object to be attained. Its words are to be given their natural and common meaning, and the prevailing principles of statutory interpretation are to be employed. Care should be taken to adhere as closely as possible to the obvious meaning of the act, without resort to that which had theretofore been the law of this commonwealth, unless necessary to dissolve obscurity or doubt, especially in instances where there was a difference in the law in the different states.

"Approaching the act from this point of view, it is apparent that no relation of principal and surety is established or contemplated by any of its sections. It determines the liability of the various parties to the negotiable instrument on the basis of that which is written on the paper. The obligation of all makers, whether for accommodation or otherwise, is to pay to the holder for value according to the terms of the bill or note. Their obligation is primary and absolute. Sections 77, 208. The act makes no provision for the proof of another and different relation than that expressly undertaken and defined by the tenor of the instrument signed. The fact that one is an accommodation maker gives rise to a duty no less or greater or different to the holder for value than that imposed upon a maker who received value. This is expressly provided by the act, even though such

holder knew at the time that the maker was an accommodation maker. Section 46. The act further provides in definite terms that the instrument and hence one primarily liable is discharged in one of five different ways (Section 136), that is, by payment by the principal debtor, or by the party accommodated, by cancellation, by any other act which would discharge a simple contract, and by the principal debtor becoming the owner at or after maturity. There is no mention here of a discharge of an accommodation party by extension of time. But among the ways in which a party secondarily liable may be discharged is (Section 137) an agreement by the holder to extend the time of payment or to postpone his right to enforce the instrument 'unless made with the assent of the party secondarily liable or unless the right of recourse against such party is expressly reserved.' Whatever force might attach to the enumeration of ways in which the instrument and consequently parties primarily liable might be discharged, if this provision stood alone, the inference arising from the omission of extension of time from such enumeration and its inclusion among the ways in which persons secondarily liable may be discharged, is almost irresistible that the legislature did not intend that persons primarily liable should be discharged in that manner. These two sections standing side by side, both dealing with the subject of discharge of liabilities of parties, the one mentioning, the other not mentioning, extension of time by the holder as a means of working discharge of liability, cannot be treated as accidental or without significance. It is strong proof of a legislative purpose to change the pre-existing law of the commonwealth. These considerations outweigh the argument adduced from the fact that the 'instrument' rather than 'parties primarily liable' is the language used in section

136 and from the phrase of clause 4, to the effect that the instrument may be discharged 'by any other act which will discharge a simple contract.' The act establishes a liability on the part of an accommodation maker, which is not affected by an extension of time given by the holder to any other party to the note, even though as between such party and the accommodation maker a different relation may subsist in fact from that appearing on the face of the paper. The result is to render somewhat more rigid the rights of the parties as set forth in the written instrument, and so far as the holder is concerned to establish liability to him upon a firm basis, not easily shaken by parol evidence.''

The annotator, in 48 A. L. R., 716, says:

''Except in Iowa, Missouri, and Texas, it has been held uniformly in the jurisdictions which have passed upon the question that an accommodation maker of, or surety on, a negotiable instrument, is not, under the Negotiable Instruments Law, discharged by an extension of time granted to the principal maker such as would have discharged the surety or accommodation party prior to that law, although the holder has knowledge of the real character of such accommodation party or surety.''

Beginning on page 723 the annotator has listed the cases holding that a surety and accommodation maker can be discharged only in the methods prescribed by the act for the discharge of the instrument itself.

This court is committed to the majority rule. In *Graham* v. *Shephard*, 136 Tenn., 418, 425, J. C. Graham and C. A. Graham were sued by Shephard on a note which they executed to him. It appeared without dispute that C. A. Graham was an accommodation maker, and this was known by the holder at the time the note was executed. About the time of the maturity of the note the

holder made an agreement with J. C. Graham, for a valuable consideration, to extend the time of payment without the knowledge or consent of C. A. Graham. The court, after stating that prior to the adoption of the Uniform Negotiable Instruments Law C. A. Graham would have been released upon the facts of the case, quoted extensively from *Union Trust Co.* v. *McGinty, supra,* as to the object sought by this law, and concluded its opinion as follows:

"The plain meaning of the general provision of the act that persons primarily liable on an instrument are those who 'by the terms of the instrument' are absolutely required to pay it necessarily includes the accommodation maker. By reference to the terms of the instrument in suit it is obvious that the plaintiff in error is absolutely required to pay it. His signing the note as surety, as an accommodation for his brother, does not appear by the terms of the instrument, but only appears by extrinsic testimony. So, if we give the words of this act their plain and obvious meaning, the plaintiff in error must be held primarily liable."

With respect to the decisions supporting the minority rule, the Supreme Court of Missouri, in *Long* v. *Mason,* 273 Mo., 266, 200 S. W., 1062, held that the surety was released where time for payment was extended without his consent in a suit by the payee, upon the ground that a payee is not a holder in due course within the meaning of the Negotiable Instruments Act, the note in such circumstances being subject to the same defenses as if it were non-negotiable. In this State a payee may be a holder in due course. *Snyder* v. *McEwen,* 148 Tenn., 423.

In *Fullerton Lumber Co.* v. *Snouffer,* 139 Iowa, 176, the Supreme Court held that the surety was released, but

stated that under the Negotiable Instruments Act the result would be otherwise if the action had been instituted by a holder in due course.

The Texas cases referred to were decided by the Courts of Civil Appeals, the decisions in various districts being in conflict, and, so far as we are aware, the question has not been adjudicated by the Supreme Court of that State.

In *Smith* v. *Blackford*, 228 N. W., 469, the Supreme Court of South Dakota held, under facts similar to those here involved, that the original maker was discharged, but based their decision on a section of the Code adopted by the same enactment as the Negotiable Instruments Law, which expressly provides that a surety is exonerated or discharged from liability by an extension of time granted by the creditor of the principal debtor without the consent of the surety. It thus appears that neither of the cases cited in support of the minority rule is in conflict with the decision of this court in *Graham* v. *Shephard, supra,* where the action was by the payee, a holder in due course.

Since defendants only contend that their status was changed from that of makers to that of sureties, and complainant being a holder in due course, it would seem that by the practically unanimous holding of the courts of last resort defendants were not discharged when complainant extended the time of payment to defendants' vendee, Bailey.

Upon principle, we are unable to distinguish this case from one where the defendant executes a note as an accommodation maker or surety, and the authorities treat the two as involving the same question. In both the equities are the same, and in neither does the party signing the note come within the provisions of section 119 of the Act.

We have found two cases involving facts similar to those in the instant case, in which it was held that the original makers were not discharged. *Peter* v. *Finzer,* 116 Neb., 380, 65 A. L. R., 1419, and *Continental Mut. Sav. Bank* v. *Elliott,* 166 Wash., 283, 81 A. L. R., 1005. The question here involved is fully reasoned in those cases.

The Court of Appeals seems to have recognized that the decision in *Graham* v. *Shephard, supra,* is opposed to their holding, but give it as their opinion that a different result would have been reached had the attention of the court been directed to section 58 of the Act, which provides: ''In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable.'' It is a sufficient reply to this contention to state that in *Graham* v. *Shephard,* as well as in the case under consideration, the action was instituted by a holder in due course.

The writ of *certiorari* has heretofore been granted, and argument waived.

For the reasons stated herein, the decree of the Court of Appeals will be reversed, and a decree will be entered in this court for the balance due on the note.