**UNITED STATES of America**

v.

**Lyndon F. FYLES, Margaret Fyles, Lyndon S. Fyles, Virginia Fyles, Cleveland S. Fyles and Phyllis Fyles.**

**Civ. A. No. 4185.**

United States District Court
D. Vermont.

Oct. 21, 1965.

———◆———

Joseph F. Radigan, U. S. Atty., Rutland, Vt., John F. Shea, Boston, Mass., for plaintiff.

Paul R. Teetor, New York City, for Cleveland S. & Phyllis Fyles.

Conley & Foote, Middlebury, Vt., for Lyndon F. Fyles, Margaret Fyles, Lyndon S. Fyles, Virginia Fyles.

GIBSON, District Judge.

The United States of America filed this action against the six defendants herein as personal guarantors for unpaid balances of $2,035.56 with interest from July 9, 1964 and $9,156.84 with interest from October 28, 1962 on two notes made by The Fyles Company of Shoreham, Vermont to the Small Business Administration (hereafter "SBA").

It alleged that on May 7, 1960 a promissory note in the amount of $14,500.00 was made by the Fyles Company to the Chittenden Trust Company of Middlebury, Vermont, and that said note was assigned to the SBA, the present holder thereof, on May 15, 1962. The second note, it is alleged, was made on October 11, 1961 by The Fyles Company to the order of the SBA.

It further alleged that the defendants each unconditionally guaranteed each of said notes by their indorsements written thereon, and that although demand has been made on each of said defendants, they have failed, refused and neglected to pay the principal and interest now remaining due.

By way of answer, the defendants allege that they signed said notes as personal guarantors in reliance on the fact that the land, mill, equipment and machinery given as collateral security therefor were worth substantially more than the aggregate indebtedness of The Fyles Company to plaintiff. They allege that on October 31, 1962 the plaintiff declared both said loans in default, that on or about December 1, 1962, all fire and related insurance carried by The Fyles Company on its mill and equipment lapsed for lack of funds to pay the necessary premiums, that the plaintiff had full knowledge of the uninsured status of the property, and that the plaintiff failed and neglected to reinstate the lapsed fire insurance. It is alleged that the defendants, to plaintiff's knowledge, were financially unable to reinstate said fire insurance, and that on July 2, 1963, while uninsured, the mill and equipment of The Fyles Company burned to the ground. The defendants claim that as a result of the plaintiff's failure to reinstate the fire insurance, the collateral security for the notes in question was impaired. The defendants Cleveland S. and Phyllis Fyles, in addition allege that they were never given notice of and had no knowledge of the lapsed insurance. Finally, the defendants claim that they are released from their obligations as guarantors by reason of SBA's impairment of the collateral security for the notes.

The plaintiff and each of the defendants have moved for summary judgment under Rule 56, F.R.Civ.P. on the basis of the pleadings, interrogatories, admissions and affidavits submitted in this case. This Court heard oral arguments on September 10, 1965.

## FINDINGS OF FACT

After consideration of the written and oral arguments of counsel, and of the interrogatories, answers, pleadings, and affidavits submitted by the parties, I hereby find that there is no substantial dispute as to the following facts:

1. The principal debtor, The Fyles Company, Inc., is a Vermont corporation which operated a plywood mill at Shoreham, Vermont from 1946 to July of 1963. Said plywood business was operated by guarantors Lyndon F. Fyles and Lyndon S. Fyles from its inception to July of 1963. Guarantor Cleveland S. Fyles took part in the operation of the business from its inception until December of 1960. Thereafter he did not participate in its operation or management. As the company was organized in 1946, Lyndon F. Fyles was elected president; Cleveland Fyles, vice president and treasurer; and Lyndon S. Fyles, clerk.

2. By 1960, the business was operating at a loss. On May 7, 1960, the company obtained a working capital loan of $14,500 from the Middlebury, Vermont branch of the Chittenden Trust Company. SBA accepted an 80% contingent participation in this loan and the three Fyles and their wives became unconditional guarantors. This loan was

secured by first mortgages on all the company's real and personal property.

3. On October 11, 1961, the company obtained a second working capital loan directly from SBA in the amount of $10,000 secured by second mortgages on the company's real and personal property. By this time, defendant Cleveland F. Fyles had ceased to participate in any way in operation of the business and had ceased to be an officer in the company. At the time of application directly to SBA for the second loan, and at all times thereafter, this fact was known to the officers and employees of SBA. Nonetheless, the 1961 loan papers as prepared by SBA on its printed forms included the names of Cleveland and Phyllis Fyles as guarantors on said loan, and at the request of defendant Lyndon F. Fyles, Cleveland and Phyllis Fyles were induced to sign as guarantors along with Lyndon F. and Lyndon S. Fyles and their wives. Defendants Cleveland and Phyllis Fyles signed said papers relying on the fact that at that time the company's mill and equipment were more than ample security for both loans obtained by the company.

4. On October 15, 1962 the Chittenden Trust Company assigned the first note to SBA for all further handling as to both SBA's interest and the bank's 20% interest.

5. On October 31, 1962 Albert J. O'Shea, Chief of SBA's Loan Liquidation Section, wrote the Fyles Company by registered mail, declaring both notes due and payable and advising that the current loan balances were $6,582.74 and $9,194.61 respectively. Said letter stated that unless payment was received within two weeks, legal proceedings would be begun, including foreclosure of the security given for the loans. Simultaneously, he sent a copy of said letter to defendants Cleveland and Phyllis Fyles, and in the covering letter to these guarantors, he formally demanded payment and stated that "in the event that any deficiency exists on these loans, it is the intention of this Administration to hold you liable on your guaranty for the payment of such deficiency." Said letters were representations to all defendants that SBA would look first to the collateral security for the notes, rather than to the individual guarantors.

6. On November 14, 1962, The Haven Insurance Agency of Vergennes, Vermont notified SBA that The Fyles Company was $284.50 behind in payments of its fire insurance, which was then costing $963.00 per year, and warned that unless SBA would consider paying the past due premiums and future premiums, it would be necessary to cancel all the insurance. On November 21, 1962, Albert J. O'Shea, of SBA's Loan Liquidation Section, wrote Lyndon S. Fyles at The Fyles Company that Haven Insurance Agency had threatened to cancel the fire insurance. Said letter stated:

This Administration is unable to advance insurance premiums but is calling to your attention the absolute necessity that this bill be paid. Your Loan Agreement calls for hazard insurance, and it is also imperative for you personally to protect your equity in the plant. Will you, therefore, pay this premium at once and advise us when this is done * * *

Neither Mr. O'Shea or any other official of SBA notified Cleveland or Phyllis Fyles that the insurance on the plywood mill was about to be cancelled, and at no time prior to the fire which destroyed said mill did these defendants have notice or knowledge that the fire insurance had expired.

7. SBA's Policy Manual, while making prohibition of insurance advances the rule, contained a specific exception in the case:

"Where in the opinion of the approving authority the value of the collateral will assure ultimate recovery of the full amount of the borrower's indebtedness. This amount shall include advances made to purchase insurance."

In addition, the security instruments here involved, from The Fyles Company to SBA, expressly permitted SBA to maintain fire insurance at the borrow-

er's expense. This Court finds nothing in SBA's regulations prohibiting SBA from following the usual custom of commercial lenders in paying insurance premiums when unpaid by the borrower and adding the amount so paid to the indebtedness secured. However, at no time did SBA undertake to pay said premiums, and the policies were cancelled in December, 1962.

8. On October 3, 1962, an appraisal of all the real and personal property at The Fyles Company plywood mill was made by SBA officials. SBA appraised said real and personal property as follows:

|  | Appraised Value | Liquidating Value |
| --- | --- | --- |
| Real property in Shoreham (2 parcels) | $ 1 600 | $ 750 |
| Building | 16 000 | 12 000 |
|  | 17 600 | 12 750 |
| Machinery & Equipment | 28 275 | 11 127 |
|  | $45 875 | $23 877 |

This Court finds, therefore, that the collateral security for SBA's loans was worth as much as if not more than the amount of The Fyles Company debt plus the cost of insurance, at all times until such property was destroyed by fire.

9. On July 2, 1963, the mill, equipment and machinery of The Fyles Company were destroyed by fire while uninsured. SBA began legal proceedings in March of 1964, when it filed a petition for foreclosure on The Fyles Company's real estate. The value of the real estate foreclosed was $4,500, leaving balances on the notes of $2,035.56 with interest from 6/9/64 and $9,156.84 with interest from 9/28/62.

10. During the period when the plywood mill was uninsured, defendants Lyndon F. and Lyndon S. Fyles drew no salary from The Fyles Company, and their income from other sources was such that they were financially unable to pay the premiums necessary to have the property insured. This fact was communicated to the officials of the SBA. The defendants Cleveland and Phyllis Fyles were similarly unable, as a result of their financial circumstances, to pay said premiums without undue hardship. In addition, these defendants were unable to pay said premiums because they had no notice either from SBA or from other members of their family that the insurance had been cancelled.

## CONCLUSIONS OF LAW

The plaintiff has submitted an extensive memorandum of law in support of its proposition that the liability of the defendants is to be determined by federal rather than state law. From this, argues the plaintiff, it follows that SBA's decision not to insure, having been made pursuant to valid rules and regulations of that agency, is not subject to review by this Court. However, it appears that in the situation here presented, the SBA's own regulations, as well as the security instruments themselves, permitted SBA to reinstate fire insurance. There is no question but that the collateral security was worth more than the amounts on both notes. Its decision not to do so was not made pursuant to any regulation whatsoever, and if made pursuant to some internal agency policy, such policy could not, in any case, prevail over the applicable common law. There-

fore, even if federal law controlled in this case, the principles for which the government argues would not be applicable here.

Quite the contrary, this Court has been able to find no federal law whatsoever applicable to the situation here presented. This being so, disposition of this case rests upon common law principles applicable to a creditor's duty where a debtor has failed to insure collateral security. Whether this Court applies common law principles or fashions a uniform federal rule makes no difference, as there is, in this situation, no conflict between federal and state law.

█ The general rule applicable here is stated in Section 132 of the American Law Institute's Restatement of the Law of Security:

> Where the creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced pro tanto if the creditor * * *.
>
> (c) fails to take reasonable action to preserve its value at a time when the surety does not have an opportunity to take such action.

Prolongation of a creditor's duty to safeguard the collateral security even past the maturity of the debt is dealt with in Comment (c) to Section 132 of the Restatement:

> The nature of the security may impose upon the creditor duties to preserve its value so long as the creditor is the only person who can conveniently take the appropriate action. This is especially true prior to maturity of the creditor's claim * * * Even after maturity, however, if the conduct of the creditor indicates that he intends to rely first on the security rather than on his claim against the surety, the creditor's duty to the surety in respect of the security may continue.

█ In the instant case, SBA expressly advised defendants Lyndon F. Fyles, Margaret Fyles, Lyndon S. Fyles and Virginia Fyles, in its letter of October 31, 1962, that unless payments were received within two weeks, legal proceedings would be begun, including foreclosure of the collateral security. By letter of the same date, SBA made the same statement to Cleveland and Phyllis Fyles, and advised them that they would be held liable "in the event of a deficiency." This representation prolonged SBA's duty to preserve the value of the collateral past the time of loan maturity and throughout the period culminating in the fire of July 2, 1963.

█ There is, furthermore, no question but that the guarantors did not have opportunity to preserve the value of the security between the time of cancellation and the time of the fire. Restatement, Security, Sect. 132. Cleveland and Phyllis Fyles were unable to reinstate the insurance simply because they had no notice that the insurer had cancelled. They were completely disassociated from the company during this period, and this to the knowledge of the SBA officials. The other four guarantors were financially unable to pay the premiums. Since SBA failed to take reasonable action to preserve the value of the security for its notes, the obligations of the guarantors here are reduced by the value of the security destroyed.

█ There is one further reason for discharging guarantors Cleveland and Phyllis Fyles. Woodruff Motors, Inc. v. Commercial Credit Corporation, 123 Vt. 404, 190 A.2d 705 states the common law rule that when a commercial lender has been notified of an insurance lapse, it has a legal duty to pass on this information to its guarantors. Such a duty does not arise solely by contract. It is imposed by law by reason of the relationship of the parties. It is undisputed that SBA failed in its duty to notify Cleveland and Phyllis Fyles of the insurance cancellation.

## ORDER

Therefore, it is ordered that the complaint be and hereby is dismissed as to each defendant.