**COMMERCE UNION BANK, Appellant,**

v.

**Henry E. MAY, Sr., et al., Appellees.**

Supreme Court of Tennessee.

Dec. 3, 1973.

William J. Harbison, Herman O. Loewenstein, Nashville, for appellant.

Walter C. Kurtz, Russell Overby, Nashville, for Henry E. May, Sr.

Howard F. Butler, Nashville, for Joe F. Shelby and wife, Pauline G. Shelby.

## OPINION

FONES, Justice.

The parties will be referred to as follows: Commerce Union Bank, complainant below, as complainant; Henry E. May, Sr., as May; Joe F. Shelby and wife, Pauline Shelby, as the Shelbys, or May and the Shelbys, as defendants, where appropriate.

Complainant sued defendants in the Chancery Court of Davidson County, for a deficiency balance, stipulated to be $4,811.-01, plus interest and attorney's fees, due upon a note secured by trust deed on real estate, following default in the payment of the note and a foreclosure sale.

Prior to the foreclosure sale the Mayfair Hotel, located on the premises covered by the deed of trust, was destroyed by fire. The fire insurance policy covering the improvements on said realty had expired, for failure to pay the premium, approximately three months prior to the fire.

The Chancellor held that, under the facts of this case, the law imposes, " . . . a duty on a commercial creditor to act to preserve the security for a surety without notice by either notifying the surety or obtaining insurance coverage at the expense of the debtor." The facts having been stipulated, complainant perfected its appeal to this Court from the decree of the Chancellor dismissing the complaint.

The facts stipulated and shown by exhibits are:

Complainant made a loan to May, in the principal sum of $6,451.20. May executed a note for said principal amount, dated March 28, 1967, payable in sixty monthly installments of $107.52, beginning May 5, 1967. As security for the payment of said note, May executed a deed of trust upon realty in Davidson County, upon which was situated the Mayfair Hotel. A policy of fire insurance was procured by May from Thomas Jefferson Insurance Company for the period from April 12, 1967 to April 12, 1968. May was the insured and complainant was shown as mortgagee in said policy and a memorandum of the policy was delivered to complainant.

The deed of trust executed by May contained the following provision:

"And I agree to keep all the buildings on said property insured in some reliable fire insurance company or companies for the sum of $_____ until the sum herein secured is fully paid, and to have the loss made payable on the policy to said Trustee for the benefit of the owners and holders of the debt herein secured."

The note executed by May contained the following provision:

"Bank shall have no liability to perform services, send notices or take action of

any kind in connection with the management of the collateral except to account for property actually received by it and shall have no duty to take action in preserving any of the collateral except upon notice from the undersigned and provision for reimbursement of any expenses to be incurred."

On October 21, 1967, the Shelbys purchased the hotel property from May and assumed the mortgage.

On October 25, 1967, Charles R. Kyle, et ux. purchased the hotel property from the Shelbys and assumed the first mortgage. A second mortgage was executed by the Kyles to secure a $4,000 note payable to the Shelbys.

On October 27, 1967, Ramsay Realty & Auction Company wrote a letter to complainant, with reference to the May loan, advising that said Realty Company had handled the sale of the Mayfair Hotel from May to the Shelbys, and a few days thereafter, from the Shelbys to the Kyles; that in both sales, complainant's loan balance was assumed by the grantees; that the Shelbys had taken a second mortgage and desired to be notified in the event that payments on the first mortgage should become delinquent; that the Kyles agreed to take care of proper endorsement of the fire insurance and to increase it by $4,000.

A letter exhibit, dated March 28, 1968, reflects that Robert R. Street, presumably the agent of Thomas Jefferson Insurance Company, wrote to Charles Kyle, at the Mayfair Hotel, giving notice that the fire insurance policy would expire on April 12, 1968. There is no evidence in the record that a copy of said notice was given to or received by complainant, May or the Shelbys. The hotel was destroyed by fire in July, 1968.

There is no evidence in the record that complainant or May or the Shelbys had any knowledge, prior to the fire, that the premium to renew the fire insurance had not been paid.

The Kyles defaulted in the payment of the second mortgage obligation to the Shelbys and the Shelbys foreclosed on August 14, 1968. The Shelbys sued the Kyles in the Circuit Court of Davidson County and obtained a judgment for the deficiency on the second mortgage in December, 1968. The Shelbys purchased the property at the foreclosure sale and again assumed the first mortgage held by complainant.

At some unspecified time thereafter, default occurred in the payment of the note held by complainant. A foreclosure sale pursuant to the terms of the first deed of trust was held on October 27, 1970, and complainant filed this suit for the deficiency balance resulting from said sale, on December 4, 1970.

Charles Kyle and his wife filed petitions in bankruptcy, listed the debt due complainant, and were discharged.

In his analysis of the instant case, the learned Chancellor held that, upon the sale of encumbered real estate and assumption of the mortgage by the purchaser, the original mortgagor becomes a mere surety for the purchaser, who then becomes the principal debtor. Under this rule the Chancellor concluded that May was entitled to assert the defenses available to sureties under the equitable principles of suretyship, having "recast" his role from that of maker of the note to surety for the Shelbys. Wright v. Bank of Chattanooga, 166 Tenn. 4, 57 S.W.2d 800 (1933), was cited as authority by the Chancellor for said conclusion.

In *Wright,* Bank was not the maker of the note. Wright made a loan to McBrien, et ux. and they executed a note and deed of trust on realty to secure same. Bank purchased the land from the McBriens and assumed the mortgage debt and subsequently conveyed the land to Jenkins, and he assumed the debt. Wright granted an extension of the due date of said note to Jenkins without the knowledge or approval of the Bank. The Chancellor held that, inasmuch as Bank and Jenkins' names did not appear

on the note, their obligation was not controlled by the negotiable instrument law, but by equitable principles of suretyship. This Court agreed and affirmed the Chancellor in holding that Wright's extension of payment to Jenkins discharged Bank.

Mr. Justice Cook, writing for the Court, said:

"While the Negotiable Instruments Law may rigidly fix rights and obligations, according to the tenor of the instrument and as between the holder and parties to the instrument, as held in Atlantic Life Insurance Co. v. Carter, [165] Tenn. [628] 57 S.W.(2d) 449 opinion filed February 25, 1933, the act does not protrude into the realm of equity jurisprudence and impair or destroy rights and equities arising from independent contract between the mortgagor, his grantees, and the mortgage creditor. By such contracts, parties *whose names do not appear on the instrument* representing the mortgage debt are often brought into circumstances which result as a legal consequence, independent of the instrument and uncontrolled by the Negotiable Instruments Law, in establishing either a primary or a secondary liability for the debt." (Emphasis supplied).

In Atlantic Life Insurance Co. v. Carter, 165 Tenn. 628, 57 S.W.2d 449 (1932), the Carters were the makers of a note evidencing an indebtedness to Insurance Co. They sold the land which was mortgaged to secure said debt to Bailey, who assumed its payment as part of the purchase price. Insurance Co. granted Bailey an extension of payment without the knowledge or consent of the Carters. Bailey defaulted and Insurance Co. sued the Carters who defended upon the ground that when Bailey assumed the payment of the note he became primarily liable and they, being only secondarily liable, were released by said extension, without their consent. The Court observed that, independent of the Uniform Negotiable Instruments Law, this would unquestionably be correct. However, the Court held the Carters liable, predicated upon an analysis of Sections 60 and 120 NIL.

Section 60 NIL declared that the maker of a negotiable instrument engages that he will pay it according to its tenor. Section 120 NIL provided that a person secondarily liable on an instrument was discharged if the holder extended the time of payment without the assent of said party. Said Section also contained five other grounds for discharge of parties *secondarily liable*. The Court noted that said discharge provisions are not available to persons *primarily liable*. In rejecting the argument that the maker becomes secondarily liable upon the assumption by his grantee of the debt, the Court quotes from Union Trust Co. v. McGinty, 212 Mass. 205, 98 N.E. 679, as follows:

"The obligation of all makers, whether for accommodation or otherwise is to pay to the holder for value according to the terms of the bill or note. Their obligation is primary and absolute. . . . The act makes no provision for the proof of another and different relation than that expressly undertaken and defined by the tenor of the instrument signed."

The principle declared in Atlantic Life Ins. Co. v. Carter, supra, that the maker of a note cannot recast his role to that of surety by transfer of the property and assumption of the debt by his grantee, and thus remains primarily and absolutely liable on the note, is still the law in Tennessee unless it has been changed by the UCC. It is urged in this Court on behalf of May, that T.C.A. § 47-3-606 has changed the law; that following his transfer of the mortgaged premises and assumption of the debt by the Shelbys, he became a surety, and the defense of unjustifiable impairment of collateral by the bank discharges him. Said contention was not made in the Chancery Court.

T.C.A. § 47-3-606(1)(a) and (1)(b) provide as follows:

*"Impairment of recourse or of collateral.* —(1) The holder discharges any party to the instrument to the extent that without such party's consent to the holder

(a) without express reservation of rights releases or agrees not to sue

any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary; or

(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

. . . "

Chapter 3 of the UCC, entitled "Commercial Paper", represents a complete revision of the Uniform Negotiable Instruments Law and the Sections of the Tennessee Code containing the NIL were repealed simultaneously with the adoption of the UCC. T.C.A. § 47-3-606 replaces, in part, Section 120 NIL. In stating the purposes of change wrought by this Section of the UCC, it is said, in Comment 1, that the *suretyship* defenses are not limited to parties who are "secondarily liable", but are available to any party who is in the position of a surety, " . . . including an accommodation maker or acceptor known to the holder to be so."

T.C.A. § 47-3-102(1)(d) defines "secondary party" as "a drawer or indorser". That definition is more restrictive than its predecessor in the NIL. Section 192 NIL, provided that the person primarily liable was the person who, by the terms of the instrument, was absolutely required to pay, and all other persons were secondarily liable. In our opinion, the phrase, "any party to the instrument," is used in the subject statute to embrace parties to the instrument in addition to drawers and

endorsers *who are in the position of a known surety*. In the instant case, May, the maker, has a right of recourse against the Shelbys, dehors the instrument, and the Bank had knowledge of the transfer. But May is not in the position of a surety unless some provision in the subject statute requires that his relationship to the holder be changed from principal to surety.

This Court has held, since 1932, that a maker-mortgagor cannot recast his relationship to the mortgagee from principal to surety by his unilateral act of sale of his equity and assumption of the debt by his grantee. That has been the prevailing view in this country. See 55 Am.Jur.2d (Mortgages), § 1037. The Commercial Code has retained the exact import of Section 60 NIL upon which that holding in Atlantic Life Insurance Company v. Carter, supra, was predicated, to wit: that the maker engages that he will pay the instrument according to its tenor. T.C.A. § 47-3-413. There is no provision in T.C.A. § 47-3-606 directing that another and different relationship shall result between a maker-mortgagor, and his mortgagee, following transfer of the mortgaged property and assumption of the debt by another. It therefore follows that the discharge benefits of the Section are not available to May.

We are aware that some jurisdictions have held that the phrase, "any party to the instrument," necessarily embraces all makers and endorsers. See Rushton v. U. N. & M. Credit Corp., 245 Ark. 703, 434 S.W.2d 81 (1968); 55 Am.Jur.2d (Mortgages), § 1120, last grammatical paragraph p. 935-936.

For an additional reason, the defense of unjustifiable impairment of collateral is not available to May.

Comment No. 5 to the official text of T.C.A. § 47-3-606 observes that paragraph (b) of sub-section (1) is new, and we are referred to § 47-9-207 for situations in which a holder's actions in dealing with collateral may be unjustifiable. T.C.A. § 47-9-207 deals entirely with situations in

which the collateral is in the possession of the holder. The definition of collateral appears only in T.C.A. § 47–9–105 of the UCC and said definition and the comments thereto make it clear that collateral is confined to tangible and intangible personal property. But even more fundamental is the fact that the UCC does not supersede the law in this State with respect to liens upon real estate. Expressly, T.C.A. § 47–9–104, entitled *"Transactions excluded from Chapter,"* provides:

"This chapter does not apply

.    .    .    .    .    .

(j) except to the extent that provision is made for fixtures in § 47–9–313, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder;"

The remaining question for determination is whether or not complainant, under the facts and circumstances of this case, including the relevant provisions of the trust deed and note, has committed any act of omission or commission that discharges the Shelbys.

In his memorandum opinion, the Chancellor cited and relied upon the following passages from the Restatement of the Law of Security:

*Section 132:*

"Where the creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced pro tanto if the creditor   .   .   .
(c) fails to take reasonable action to preserve its value at a time when the surety does not have an opportunity to take such action."

*Comment (c) to Section 132:*

"The nature of the security may impose upon the creditor duties to preserve its value so long as the creditor is the only person who can conveniently take the appropriate action."

Thereafter, the Chancellor reasoned:

"Following the rationale of the Restatement, and prior case law, several facts in the case at bar become important to the disposition of the question now before the Court. The creditor, Commerce Union, is a commercial lender with extensive knowledge and experience in real estate transactions, mortgages and commercial credit. The insurance policy was at all times in the possession of Commerce Union. The sureties had no notice of the lapse of insurance coverage. Commerce Union was, therefore, the only party in a position to take the appropriate action to protect and preserve the security."

The cases relied upon by the Chancellor and by counsel for the Shelbys, in this Court, for the conclusion that the affirmative duty to act and maintain the insurance in force was upon the Bank and its failure to prevent the lapse discharges defendants, are as follows:

United States v. Fyles, 253 F.Supp. 386 (D.C.1965); Woodruff Motors, Inc. v. Commercial Credit Corp., 123 Vt. 404, 190 A.2d 705 (1963), and Evans v. American Bank & Trust Co., 116 Ga.App. 468, 157 S.E.2d 816 (1967).

The facts of each of the three cases cited are materially different from the facts in the instant case. In *Fyles,* the Court's findings of fact were that the creditor, the Small Business Administration, was notified of the impending cancellation of the insurance; that the Small Business Administration also had notice that the company, its principals and the sureties on the obligation were all financially unable to pay the insurance premiums on the company's plywood mill, which burned after lapse of the policy.

In *Woodruff,* the Supreme Court of Vermont had before it an appeal from the trial court's denial of a motion to dismiss on the grounds that the declaration failed to state a claim upon which relief could be granted. The declaration alleged that the Motor Co. had sold an auto to one Blan-

chard, assigned the installment contract to the Credit Corporation; that the Credit Corporation had received a notice on February 24, 1961 that Blanchard's collision insurance would be cancelled effective March 7, 1961; that the Credit Corporation failed to notify the Motor Co. or procure other insurance prior to an accident on March 11, 1961, in which the automobile was totally demolished. Said allegations being admitted on a motion to dismiss, the court held that the declaration stated a cause of action.

In *Evans,* one Perry had purchased an automobile from Evans, who assigned the installment contract to Bank. The Court found that the Bank had received notice of the cancellation of Perry's insurance and notice of Perry's bankruptcy and, further, that Evans had no knowledge or notice of either the cancellation of the policy or the bankruptcy proceeding.

 We do not agree that complainant's presumed superiority of experience and knowledge of real estate transactions over defendants' created a legal duty to see that the fire insurance was renewed. To so hold would be to set an unjustifiable precedent, the consequences of which would be unpredictable and chaotic. Nor does the mere possession of the memorandum of the insurance policy upset the equal opportunity of defendants and complainant, in the eyes of the law, to know or ascertain the date of policy expiration. Under the facts of this case, complainant Bank, having no notice of pending cancellation, actual cancellation, or inability of the Kyles to pay, had no duty to anticipate that the Kyles would not renew the insurance and that the Shelbys would be oblivious to their contractual obligations. All of the parties were in an equal position to make inquiry during the period from April 12, 1967, to the date of the fire in July, 1967, to ascertain whether or not the insurance policy was in force. Further, the provision in the note whereby the Bank relieved itself of all liability to perform services, send notices or take action of any

kind in connection with the management of the security, operates as a complete bar of the right of the Shelbys to claim discharge, that claim being based upon an asserted duty to perform said acts.

Complainant is entitled to a decree against May and the Shelbys for the principal balance of the deficiency, as stipulated, plus interest and attorney's fees. If May pays the judgment, or any part thereof, he is entitled to a judgment against the Shelbys, pro tanto.

The case is remanded to the Chancery Court of Davidson County to fix a reasonable attorney fee, enter and enforce a decree in accord with this opinion. The costs are assessed against the defendants.

DYER, C. J., CHATTIN and Mc-CANLESS, JJ., and LEECH, Special Justice, concur.