**FOREST–ALL CORPORATION**

v.

**NEW ENGLAND MERCHANTS NATIONAL BANK.**

Civ. A. No. 78–2353–Z.

United States District Court,
D. Massachusetts.

March 24, 1981.

Vincent P. Dunn, Russell F. Hilliard, Concord, N. H., for plaintiff.

Siri F. Boreske, Boston, Mass., for defendant.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

The issue to be decided in this case is whether the assignee of a security agreement and a conditional sales contract owes a legal duty to its assignor-guarantor to police a provision in the conditional sales contract between the buyer and the assignor-guarantor requiring the buyer to maintain insurance on the collateral, such that the risk of loss arising from the destruction of the uninsured collateral should fall on the assignee.

Both parties have moved for summary judgment. The facts are stipulated as follows: Forest-All Corporation (Forest-All) is in the business of manufacturing and selling saw mills. In January of 1973, Forest-All entered into an equipment credit financing arrangement with New England Merchants National Bank (the Bank) whereby the Bank agreed to extend credit to Forest-All in consideration of assignments to the Bank of all of Forest-All's conditional sales contracts with its customers on a full recourse basis. There were at least thirty such assignments between January 1973 and December 1976. The Bank did not participate in any of the transactions between Forest-All and its customers, which generally took place at Forest-All's place of business in New Hampshire, nor did the Bank have any contact with Forest-All's customers prior to the assignment of the sales contracts. Prior to December 1976 the Bank did not require Forest-All to provide it with any form of proof of insurance for the collateral secured by the conditional sales contracts.

On January 6, 1975 Forest-All sold a saw mill to Hill Forest Products (Hill Forest) and executed a conditional sales contract with Hill Forest requiring Hill Forest to make periodic payments of the purchase price. This contract contained a provision stating that the Buyer agrees "... to keep the property insured with coverage and in amounts satisfactory to the Seller ... but in the event that the property is not kept so insured the Seller may at its option purchase such amount of insurance coverage." The parties failed to complete that portion of the contract relating to the price and term of insurance coverage. Forest-All then executed an assignment and guarantee contract pursuant to which all of its right, title and interest in the conditional sales contract was assigned to the Bank and Forest-All agreed to guarantee payment of the amount due under the contract in the event of non-payment by Hill Forest.[1] As in all

---

1. The "Dealer Assignment and Full Guaranty" provides in pertinent part:

   For value received, the undersigned hereby assigns all the undersigned's right, title and interest in and to the within instrument and

the other such transactions, the Bank did not participate in the sale and did not demand or receive any proof of insurance from Forest-All or Hill Forest.

On November 27, 1976 a fire destroyed the saw mill at Hill Forest. There was no insurance covering the collateral. Between January, 1975 and the date of the fire, Forest-All had been in contact with Hill Forest at least six times concerning supplying various parts needed by Hill Forest for the operation of the saw mill, and the Bank had been in contact with Hill Forest at least three times concerning delinquent payments. There is no reason to believe that either party was aware of Hill Forest's failure to procure insurance.

On or about February 2, 1978 the Bank debited various Forest-All accounts in the amount of $31,919.83. Forest-All sues to recover this amount in addition to other monies allegedly lost. The Bank counterclaimed for additional sums allegedly due it which the parties stipulate to be in the amount of $1,025.58.

Forest-All contends that the Bank had a duty to monitor the insurance provisions of the contract and that its failure to do so constitutes an unjustifiable impairment of Forest-All's collateral, thereby discharging the plaintiff from its guaranty of Hill Forest's obligation. In support of its contention Forest-All cites the Restatement of Security, § 132(c) which states:

> Where the creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced pro tanto if the creditor ... fails to take reasonable action to preserve its value *at a time when the surety does not have an opportunity to take such action.*" (emphasis added)

Comment (c) to this section explains that the creditor's obligation to take action to preserve the collateral arises only "so long as the creditor is the only person who can conveniently take the appropriate action."

It is clear in this case, despite Forest-All's contentions to the contrary, that the Bank was never the only party who was in a position to monitor the buyer's insurance coverage. At the very least both Forest-All and the Bank were in an equal position to inquire of Hill Forest as to its compliance with the insurance provisions of the conditional sales contract. The fact that the debtor was Forest-All's customer, that the closing of the sale and execution of all documents took place at Forest-All's place of business in New Hampshire without any participation by the Bank, and that Forest-All had an ongoing relationship with the debtor as a supplier of saw mill parts, suggests that Forest-All in fact was in a better position to enforce the insurance provisions of the contract. In such a situation the Bank owed no duty to monitor the debtor's insurance coverage and cannot be required to bear the risk of loss of the collateral. *See, Commerce Union Bank v. May,* 503 S.W.2d 112 (Tenn.1973).

In addition there was no course of dealing between the parties from which this Court could imply such a duty. The affidavit of James M. Sweeney, Assistant Vice President of the Bank, establishes that prior to the Hill Forest fire it was the Bank's custom and policy to rely on its equipment dealers to verify insurance for their own customers and the Bank had no internal follow-up system for requiring either the dealer or its customer to provide the Bank with insurance data. Thus the Bank did not in any way induce Forest-All to believe that it would monitor the debtor's insurance. obligation.

Forest-All urges however that Section 3–606(1)(b) of the Uniform Commercial Code is controlling here. That Section provides that:

> [t]he holder discharges any party to the instrument to the extent that without such party's consent the holder unjustifiably impairs any collateral for the instrument given by or on behalf of the party

the property covered thereby to New England Merchants National Bank of Boston, and authorizes it to do every act and thing neces-

sary to collect and discharge the same, either in the name of the undersigned or in its own name.

or any person against whom he has a right of recourse...
Mass.Gen.Laws ch. 106, § 3–606(1)(b).

As a preliminary matter it is by no means clear that this provision applies to the case at bar. Comment 5 to this Section in referring to Section 9–207 of the Code for situations in which a holder's actions may be unjustifiable, suggests that Section 3–606 only applies where the collateral is in the possession of the holder. *Commerce Union Bank v. May*, 503 S.W.2d 112 (Tenn.1973). In addition it is unclear whether the conditional sales contract is a negotiable instrument as defined by the Uniform Commercial Code so as to bring the transaction within the ambit of Section 3–606.[2] *Chrysler Credit Corporation v. Friendly Ford, Inc.*, 535 S.W.2d 110 (Mo.App.1976).

Assuming, however, that Section 3–606 is applicable here, that Section cannot be read to impose a duty upon the secured party to insure the collateral. The Massachusetts Code Comment to Mass.Gen.Laws ch. 106, § 9–207 states that the provision in § 9–207(1)(b) which provides that risk of loss is on the debtor for any deficiency in insurance coverage "does not change the common law rule that the pledgee was not an insurer, but merely subject to the duty of reasonable care." In the circumstances of this case the reasonable care standard does not encompass any duty on the part of the Bank to procure or monitor insurance.

Plaintiff relies on *Woodruff Motors, Inc. v. Commercial Credit Corporation*, 123 Vt. 404, 190 A.2d 705, *aff'd*, 124 Vt. 37, 196 A.2d 569 (1963); *Evans v. American National Bank and Trust Co.*, 116 Ga.App. 468, 157 S.E.2d 816 (1967); and *U.S. v. Fyles*, 253 F.Supp. 386 (D.Vt.1965), which required the secured party either to notify the guarantor of a lapse in insurance coverage or to procure insurance itself, upon receiving notification of that lapse from the insurance company. But in those cases the secured party was the loss payee on the insurance policy and the only party to receive the notice of the lapse in insurance coverage. The secured party was thus the sole party in a position to monitor such coverage and it was properly charged with a duty to do so. In this case by contrast the guarantor was in an equal if not superior position to discover the insurance status of the debtor and therefore the guarantor is properly chargeable with the loss. Similarly *Commerce Union Bank v. May*, 503 S.W.2d 112 (Tenn.1973), in which the Supreme Court of Tennessee refused to impose a duty upon the secured party to monitor the debtor's insurance coverage, while seemingly analogous to the present case, also differs in that in *May* the assignment contract explicitly absolved the bank of any duty to preserve the collateral.

Consequently, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is allowed. Judgment may be entered for the Bank on the complaint of Forest-All Corporation, and judgment may be entered for the Bank on its counterclaim in the amount of $1,025.58. The Bank's claim against Norman C. Fauteux, Lisette Y. Fauteux, Henry M. Shepard and Irene J. Shepard is dismissed for lack of prosecution.

---

**2.** Mass.Gen.Laws ch. 106, § 3–104 states that a negotiable instrument within Article 3 must "contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article."

Retail installment sales contracts usually fail this test since they contain additional promises by the maker. J. White and R. Summers, Handbook of the Law Under the Uniform Commercial Code §§ 13–2, 14–4 (1972).